UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STACY GUERCIA,

                    Plaintiff,

             v.

EQUINOX HOLDINGS, INC. *et al.*,

                    Defendants.

11 Civ. 6775

**OPINION**

This is a gender discrimination action brought by Stacy Guercia against her former employer, Equinox Fitness Club.  She alleges that, during her time as a construction project manager for Equinox, she was subjected to derogatory comments about her gender and sabotaged in the performance of her duties because she was a woman.  This pattern of sabotage became so pernicious, she alleges, that she was forced to resign from the company.

Guercia brings the present motion for a protective order and to quash subpoenas served by Equinox on her former employers.  These subpoenas seek certain basic records regarding her employment history.  She argues that these subpoenas were served without prior notice in violation of Fed. R. Civ. P. 45(B)(1) and will impose an undue burden on her by souring her reputation in what she describes as an insular business community, in an effort to seek largely irrelevant or unnecessary material.

1

The motion is granted.

## The Complaint

The complaint alleges that Guercia is a "seasoned construction professional with a solid reputation in the industry."  She holds a bachelors degree in business administration from San Francisco State University and a master's degree in marketing and brand management from the Instituto Marangoni in Milan, Italy.  With this educational background, the complaint alleges that Guercia began her career as a construction project manager and built a strong reputation in the construction business community.

She joined Equinox in late 2007 and was assigned to an Equinox construction project on West 17th Street.  There she was to work with another Equinox employee, who was the director of construction at the site and who had served as interim project manager of the site until Guercia was hired to assume that role.

That assignment did not begin auspiciously, however — several Equinox employees allegedly told Guercia that they were surprised at her assignment because the construction director she would be working with had a reputation for disrespecting women.

And to judge by the allegations in the complaint, these warnings were amply justified.  The construction director's conduct as alleged in the complaint is the very image of gender discrimination in the workplace.  Guercia alleges that he made derogatory comments about women, said that women should not work in the construction business, said she should

have been given a position no higher than assistant project manager, and told her that she should only speak when spoken to. Then, after leaving the site for approximately one month, he returned and announced that he was now "in charge" of the site and that he was shocked at how it had been run in his absence. The complaint alleges that, to Guercia, it was clear that he made these comments because she was a woman. Guercia reported this behavior to her superiors at Equinox and how it was undermining her authority as project manager at the site, but the complaint does not allege what, if any action was taken.

Over the course of the next year, Equinox entrusted Guercia with the supervision of many more construction sites. However, the West 17th Street construction manager allegedly took steps to interfere with Guercia's work at these other sites as well, including sites that he was not assigned to. He told Guercia and several of her colleagues that she could not handle the work she had been assigned and he told the men working at one site not to follow Guercia's specifications. At this point, however, Equinox management took action and told him not to visit Guercia's project sites and transferred him to work on a project in Dallas, Texas with a new project manager.

But the damage to Guercia's authority at the worksite was done. The men at the sites stopped speaking to her, did not inform her of meetings that were being held, and did not attend her meetings. Then, in July 2008, the Texas project manager, the West 17th Street construction manager's supervisor at the Dallas site, appeared at one of Guercia's sites and announced that Guercia now reported to him and that he was going to teach her about

construction operations.  He refused to tell Guercia, however, who had given him the authority to take over the site.

And although he was now assigned to a site 1,500 miles away, in Texas, the West 17th Street construction manager allegedly continued to undermine Guercia.  He told a contractor and an electrician not to cooperate with her and also told the contractor that he was going to sabotage Guercia's work.  Guercia informed her supervisors of this but the complaint alleges that they did not believe her.

Despite these impediments, Guercia remained committed to her job, once staying awake for 72 hours while simultaneously supervising the work at three different Manhattan project sites.  This diligence earned her the praise of the president of Equinox who, at an August 2008 meeting, said that Guercia's efforts in the company ought to be supported.

According to the complaint, however, the president's support did little to alter the pattern of sabotage that had undermined Guercia's efforts since she began at Equinox.

At one site, two contractors failed to post the required permits but stymied Guercia's efforts to fix the problem.  She notified her superiors at Equinox but, instead of interceding on her behalf, they hired one of the contractors.

Documents were also sometimes removed from her desk (and, on one occasion, from her computer).  She would often find the documents on the desks of the same Equinox employees who, the complaint alleges, had previously undermined her in other ways.

Guercia called the Equinox "ethics hotline" to report these incidents, but no action was taken.  After she made the call, however, the complaint alleges that a vice president of Equinox, Jeffrey Weinhaus, began calling the office only to see if Guercia was in.

By that point, Guercia had completed all of her assigned projects except the opening of the 74th and 76th Street locations.  The 74th Street opening, however, did not go smoothly.

Guercia alleges that, at the last moment, Equinox managers, including Weinhaus, decided that, in a departure from the modern, industrial style that they had planned, the ceiling of the men's locker room should be covered by a dry-wall drop ceiling.  This meant, however, that the fire protection systems that had been installed, including sprinklers, could not operate properly because they were all located above the new drop ceiling.  Guercia informed Weinhaus that this was a serious safety problem, but he took no action.

Because of this problem, Equinox could not secure a Temporary Certificate of Occupancy for the 74th Street location.  It opened without one.  And because Equinox was allegedly embroiled in a dispute with its contractor, and because it refused to hire a new one, Equinox was unable to make any progress in remedying the safety problems.  Guercia claims that she tried to schedule meetings to discuss how to address these problems, but her colleagues refused to meet with her.  Instead, she alleges that they scheduled their own meetings and did not invite her.

As this was all going on, Guercia alleges that the site received numerous citations from the New York City Police and Fire Departments.  Guercia's name was listed on these

citations, despite the fact that she had done all she could within Equinox to remedy the violations.

This situation persisted for four months.  At that point, because she was concerned about the ongoing violations and safety hazards at the site, because Equinox refused to respond to her concerns, and because of the ongoing alleged discrimination against her, Guercia concluded Equinox no longer wanted her as an employee and left her job.

Guercia also alleges, more generally, that she was paid less than her male counterparts despite her greater responsibilities.

### The Subpoenas

Guercia received notice on December 6, 2012 that Equinox intended to serve subpoenas on four of her former employers.  The Subpoenas seek basic employment information —dates of employment, compensation, responsibilities, etc. — from all four employers.  One also inquires about Guercia's ownership interest in the company.

Equinox contends that the material to be discovered relates to the "central issues" in this case.  First, it contends, these records relate to Guercia's prior work experience. Equinox suggests that one of its defenses to Guercia's claims will be that it took the actions it did due to Guercia's level of industry experience.  Second, Equinox argues that these employment records will tend to show that Guercia was untruthful in an affidavit she submitted in her 2005 personal bankruptcy filing.  In that affidavit, Guercia represented to

the bankruptcy court, under oath, that she was a student and had earned no income during the years 2004 and 2005.  Meanwhile, however, Equinox contends that the resume Guercia submitted to Equinox during the employment application process indicates that she was employed during the same period of time.  The employment records Equinox seeks would therefore tend to show that Guercia was either untruthful on her resume or untruthful in her sworn affidavit and, accordingly, undermine her credibility.

Guercia argues that her work experience is not at issue in this case and that the documents Equinox seeks would not be admissible at trial to impugn her credibility.  On the other hand, she argues, these subpoenas will seriously tarnish her image in the close-knit New York City construction industry.  Therefore Guercia contends that the subpoenas are unduly burdensome and should be quashed.

## Legal Standard

The court may issue an order to protect a party from discovery that would cause "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26.  If a protective order is issued, the court may enforce it by quashing any subpoena issued in violation of the protective order.  See Fed. R. Civ. P. 45 (c)(3)(A).

The court agrees with Guercia that to permit these subpoenas to be served could be seriously detrimental to her business reputation and career.  No employer relishes the experience of responding to a subpoena for an employee's records.  And the stigma

associated with the service of a subpoena and the revelation that Guercia is participating in a lawsuit against her former employer could, if these facts were to become widely known in the construction industry, clearly interfere with Guercia's ability to engage in that line of work.  The issue, then, is one of relevance and probative value.  How relevant and probative is the information Equinox seeks in relation to its burden on Guercia?

## I. Guercia's Actual Work Experience is not a "Central Issue"

Contrary to Equinox's suggestion, Guercia's work history is far from central to this case.  The defense Equinox describes — that the actions it took were due to Guercia's qualifications and, in particular, her work experience — is certainly a legally sound one.  But Guercia's records from former employers are not relevant to establishing the facts that this defense depends on.

This line of defense turns on establishing facts regarding Guercia's actual performance on the job and the views formed within Equinox about Guercia's work experience.  The inquiry focuses on Equinox's reasons for treating Guercia the way that it did.  In this context, external facts that might tend to support Equinox's view of events at the time are relevant to the extent that they were actually known to Equinox when it made the decisions.  When Equinox made the decisions challenged in this lawsuit, it must have done so on the basis of information that it actually possessed.  If it possessed the employment records that it now seeks to obtain by subpoena, then the subpoena is obviously unnecessary.  If it did

not possess them, then the records cannot have played any role in Equinox's decision-making process and are irrelevant.

It cannot be a defense to a gender discrimination lawsuit that there are facts, though not discovered until the lawsuit was underway, that *could have* justified the employer's acts. It is well established that Title VII forbids an employer from "act[ing]on the basis of gender." See, e.g., Price Waterhouse v. Hopkins, 490 U.S. 228, 250 (1989).  It is thus irrelevant whether there are other bases upon which the employer might, but did not actually, act.

It is true that the records could lend some credibility to any other evidence that Equinox might develop to directly show its employees' states of mind in interacting with Guercia.  But it is important to emphasize that this support could only be very attenuated if Equinox employees did not actually have access to the records in making their decisions. It is outweighed by not only the burden imposed by Equinox's subpoenas on Guercia but also the confusion that the introduction of these documents at trial could cause the jury. To admit them might well lead a juror to believe that Equinox can defend this lawsuit by showing that Guercia was *in fact* inexperienced, instead of showing that Equinox *believed* that she was, and that this belief formed the basis of its actions.  See Fed. R. Evid. 403.

Thus, the employment records would likely not be admissible at trial and are not sufficiently relevant as a means of establishing that Equinox acted for permissible reasons to justify the burden of subpoenaing them from four of Guercia's former employers.

9

## II. The Employment Records Will Be of Little Value in Establishing Guercia's Credibility at Trial

Equinox contends that it has uncovered an affidavit, filed in Guercia's 2005 personal bankruptcy proceeding, in which she claims to have been a student and to have had no income for the years 2004 and 2005. Equinox says that this contradicts the resume Guercia submitted during the employment application process. This suggests that Guercia made false statements either in her affidavit or on her resume. Guercia's employment records would demonstrate which of these statements was false and, particularly if the false statements were in Guercia's sworn affidavit, undermine her credibility.

This is a sound line of reasoning, but it does not establish that the employment records will be of much use in actually litigating this case. The problem is that the documents that Equinox seeks would not ultimately be admissible at trial — they would be barred under Fed. R. Evid. 608. Rule 608 provides that, other than evidence of criminal convictions, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." It allows these matters to be "inquired into" on cross-examination, but this permits a party only to elicit testimony from the witness about these instances, not to introduce documentary evidence. See, e.g., Hango v. Royall, 466 F. App'x 30, 34 (2d Cir. 2012); United States v. Bynum, 3 F.3d 769, 772 (4th Cir. 1993) ("A cross-examiner may inquire into specific incidents of conduct, but

does so at the peril of not being able to rebut the witness' denials.  The purpose of this rule is to prohibit things from getting too far afield-to prevent the proverbial trial within a trial.").

It is true, of course, that evidence may have relevance beyond its admissibility at trial.  Though it might not be directly admissible, it might, for example, be valuable to a party in preparing its questions for "inquiring into" past conduct.  Here, however, it is clear that Equinox already has access to evidence that would allow it to prepare such a line of questioning.

Thus, the marginal benefit to Equinox in obtaining the documents it seeks as evidence of Guercia's credibility is also small, and outweighed by the harm that would be done by obtaining them by subpoena from Guercia's former employers.

It should be added that the subpoenas are somewhat broader in scope than could be plausibly justified by either of these views.  The subpoenas ask for information regarding Guercia's earnings and benefits, for example.  This information is clearly not relevant to establishing Guercia's level of industry experience, or whether she was truthful in her 2005 bankruptcy affidavit.

Guercia also alleges that Equinox actually served its subpoenas before giving Guercia prior notice in violation of Fed. R. Civ. P. 45(b)(1) ("If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party.").  This allegation is based upon a statement in Equinox's memorandum in

opposition to this motion, in which Equinox wrote that Guercia seeks to quash motions that "Equinox recently served." The court is unable to take any action on this allegation since the parties have not had the opportunity to fully brief the issue (the issue was first raised in Guercia's reply memorandum). And, in any case, the subpoena is quashed on other grounds. If this allegation is true, however, it is troubling and the court will, of course, entertain an appropriate motion.

## Conclusion

Guercia's motion for a protective order, and to quash the subpoenas *duces tecum* issued to obtain employment documents from Guercia's former employers, is granted.

So ordered.

Dated:   New York, New York
         May 20, 2013

_____
Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 20, 2013

12